UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CIERA DANIEL,

       Plaintiff,

Case No. 11-cv-13614

v.

HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                        /

**ORDER ADOPTING REPORT AND RECOMMENDATION** (docket no.19), **OVERRULING DANIEL'S OBJECTIONS** (docket no. 21), **DENYING DANIEL'S MOTION FOR SUMMARY JUDGMENT** (docket no. 10), **AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** (docket no. 13)

The Social Security Administration ("SSA") denied Plaintiff and claimant Ciera Daniel's application for Disability Insurance Benefits and Supplemental Security Income in a decision issued by Administrative Law Judge ("ALJ") Paul Armstrong on March 18, 2010. After the SSA issued a final denial, Daniel appealed to this Court. The Court referred the matter to a Magistrate Judge, and the parties filed motions for summary judgment. On August 7, 2012, the Magistrate Judge issued a Report and Recommendation ("Report") suggesting denial of Daniel's motion and that the Court grant the Commissioner for Social Security's ("Commissioner") motion. Report, ECF No. 19.

Daniel filed four timely objections to the Report. Pl's Objection, ECF No. 21. She argues the Report improperly finds support for the ALJ's decision, which she argues errs by (1) not giving controlling weight to the opinion of treating physician Dr. Ashok Shah, (2) discounting Daniel's testimony regarding the intensity of the side effects of her medication, (3) incorrectly classifying the severity of her impairment under the Social Security listing,

and (4) using an inaccurate hypothetical when examining a vocational expert at the hearing.

Although Daniel requested a hearing, Fed. R. Civ. P. 72 does not require the Court to hold a hearing when reviewing a magistrate judge's findings. *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980) (holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 09-14919, 2012 WL 1622897 (E.D. Mich. 2012). After examining the record and considering Daniel's objections de novo, the Court concludes that none of her objections have merit. Accordingly, the Court will adopt the Report over Daniel's objections and deny her motion, grant the Commissioner's motion, and dismiss the complaint.

## STANDARD OF REVIEW

Report and recommendations for dispositive motions issued by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge who referred the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Here, Daniel objected to four findings made by the Magistrate Judge as to the ALJ's decision. Those findings will be reviewed de novo by the Court. The remainder of the Report does not require de novo review.

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g). A reviewing court only examines an ALJ's determination to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y*

2

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994). Therefore, a review of the Commissioner's decision gives great deference to an ALJ's findings. A court should not replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## BACKGROUND

Ciera Daniel, was born on August 27, 1986. Administrative Record ("A.R."), at 87, 132. In her initial application, she claimed a disability of bipolar disorder, with an onset date of around August 2003. A.R. at 156.

When the ALJ issued his decision in March 2010, Daniel was twenty-three, and living with her mother and stepfather. A.R. at 31. She had graduated from high school, with a limited prior work experience including entry level food service and retail jobs. A.R. 157, 163. She indicated she had not worked a job since being terminated from a cashier position in 2007. She indicated that her medication made her very drowsy and restless, which impacted her ability to hold a permanent job. A.R. at 24.

Daniel was first hospitalized in July 2003. She was hospitalized three times following an attempted suicide after breaking up with a boyfriend. A.R. at 237. Harbor Oaks Hospital diagnosed her with depression and oppositional-defiant disorder, and prescribed Seroquel and Trileptal. Her last discharge for this event was August 2003. A.R. at 201.

During 2005, Daniel received treatment at the Northeast Guidance Center. She stated variously that her medication helped her focus on her studies and prevented her

3

from feeling depressed, A.R. at 247; she had ambitions to go to college and eventually law school, A.R. at 252; and she held regular employment in food service for 20 to 30 hours a week since August 2004, A.R. at 246. A May 2005 evaluation stated she was fully oriented and her formal judgment was good. A.R. at 253.

In March 2007, Daniel was hit by a car and admitted to St. John's hospital following the accident. Imaging studies of her chest, brain, pelvis, and spine were negative for abnormalities. A.R. at 259.

In April 2007, Daniel was involuntarily admitted to Providence hospital for psychiatric hospitalization, after she attempted to leave her house underdressed for the weather. A.R. at 270. She was placed in restraints and sedated during her stay. A.R. at 276. She was diagnosed during this stay with depression and bipolar disorder. A.R. at 270, 276. Upon discharge, she was again prescribed Seroquel and Trileptal. A.R. at 271.

Daniel continued to receive treatment at Easter Seals Disability Services beginning in April 2007. An initial examination by a social worker found her to be cooperative and with a normal mood. A.R. at 302. Treatment notes from May 2007 indicate she was not experiencing side effects from her medication. In August 2007, her medication was modified to reduce its sedative effects. A.R. at 291. In January 2008, she reported that she had been terminated from her job in December 2007, but remained in a stable mood and was looking for a new job. A.R. at 296. Treatment notes from later in that year indicate she had an intact thought process, but was resistant to therapy. A.R. at 380.

In July 2008, after her initial application for disability benefits, Daniel was examined by Dr. Sung-Ran Cho and Dr. Kokila Sheth. Dr. Cho's examination, on behalf of the SSA, again diagnosed Daniel with bipolar disorder and concluded her prognosis was poor. A.R. at 320. Dr. Sheth's examination revealed that she demonstrated the impairment of bipolar

4

and personality disorder, but that the severity of the impairment did not meet or exceed the Social Security listing standards. A.R. at 337.

Next, Daniel sought treatment from New Passages Behavioral Health Center. Her treatment sessions with a resident social worker revealed that her mental state was largely normal, although she was resistant to therapy, including missing several sessions or ignoring the social worker. A.R. at 383, 365. Daniel also reported during this period that, on occasion, her medication was working well. A.R. at 354. Daniel was also twice examined by psychiatrist Dr. Ashok Shah. Dr. Shah's first evaluation in March 2009 indicated that Daniel was alert and oriented, and showed no evidence of depression, and that her attention and intelligence were normal. A.R. 368. Once again, Dr. Shah diagnosed Daniel with bipolar disorder. A.R. at 369. She continued treatment with New Passages until October 2009. A.R. at 341. Dr. Shah's second evaluation occurred in November 2009, when he indicated on a diagnosis form that Daniel in fact had "marked" limitations in activity and mental health categories. A.R. at 398.

Daniel first applied for Social Security disability and supplemental insurance on April 24, 2008, claiming a disability onset date of August 26, 2003. A.R. at 132, 135. The application was denied, and Daniel requested a hearing with an ALJ. The hearing was held on March 2, 2010. A.R. at 18. After the decision denying her benefits was issued, Daniel appealed to the Social Security Appeals Council, which declined to alter the decision. A.R. at 1. She then filed this action on August 18, 2011.

<u>The ALJ's Decision</u>

When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F2d 680, 683 (6th Cir. 1992). In reviewing an application, an ALJ must examine the evidence using the five-

5

step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The "claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). The ALJ found Daniel was not engaged in such activity since the alleged disability onset date of August 2003. Although she had limited work experience since then, the earnings did not qualify as substantial work activity. A.R. at 78.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" which "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Here, the ALJ found Daniel did suffer from severe impairments, namely bipolar disorder, oppositional-defiant disorder, and personality disorder. A.R. at 78.

Third, the ALJ must determine whether the claimant can prove the impairment "meets or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. § 404.1520(d). Here, the ALJ found Daniel's mental impairments, whether individually or combined, did not meet or equal the criteria for listings 12.04, affective disorders, or 12.08, personality disorders. A.R. at 79. To meet or equal a 12.04 or 12.08 listing, a claimant must meet both "paragraph A" and "paragraph B" criteria. Although the ALJ found Daniel met certain paragraph A criteria, he also found Daniel did not meet the criteria of paragraph B, which requires showing at least two of the following symptoms:

1. Marked restriction of activities of daily living; or

  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence, or pace; or
  4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, ¶ B. The ALJ found that Daniel only had mild restrictions in her activities of daily living; a moderate difficulty maintaining social functioning and maintaining concentration; and no repeated episodes of decompensation of extended duration. A.R. at 80.

  Listing 12.04 may also be met if the claimant alternatively meets "paragraph C" critieria. The ALJ found that Daniel did not meet the criteria of paragraph C, which requires a finding of:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>   1. Repeated episodes of decompensation, each of extended duration; or
>   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04, ¶ C. Here, the ALJ found that the medical record did not show a history of a disorder in combination with repeated extended episodes of decompensation, a process resulting in a state such that marginal adjustments would cause decompensation, or a history of inability to function outside a highly supportive living arrangement. A.R. at 80.

  Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show she cannot engage in work she has performed in the past. In making this determination, the ALJ will consider all the relevant evidence. The ALJ must first conclude there is an underlying medical impairment capable of producing the

7

claimant's symptoms, and then make a judgment as to the intensity, and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e).

Here, after examining the evidence, the ALJ initially determined that Daniel's bipolar disorder and other mental impairments were capable of producing the symptoms she claimed, including "depression, anxiety, mood swings, anger and irritability, irrational thinking, crying spells, and feelings of hopelessness and helplessness." A.R. at 81. The ALJ next determined, in light of all the relevant evidence, that the intensity and overall effects of the symptoms did not render Daniels disabled, but that she had a residual functional capacity to do "medium" work with some limitations. A.R. at 80.

In making this finding, the ALJ considered several sources of evidence. The ALJ considered consultative psychiatric examinations. Dr. Sung-Ran Cho concluded Daniel had bipolar disorder and had severe functional limitations. The ALJ, however, noted that the remainder of Dr. Cho's report indicated Daniel was polite and in good contact with reality, although somewhat guarded and irritable. Based on this inconsistency and the report's inconsistency with the remainder of the record, the ALJ did not award Dr. Cho's conclusion much weight. A.R. at 81.

The ALJ also considered Dr. Sheth's examination. Dr. Sheth concluded the medical evidence substantiated a claim of mental impairment, including bipolar disorder. Dr. Sheth's assessment also concluded that the impairment resulted only in mild or moderate limitations on her abilities to interact socially and maintain daily activities. A.R. at 82. The ALJ, finding these conclusions to be consistent with the weight of the evidence, gave substantial weight to these findings. A.R. at 82.

The ALJ examined the longitudinal treatment record from the various hospitals and

8

health clinics Daniel visited since 2003, including Harbor Oaks, the Northeast Guidance Center, and Providence Hospital. The ALJ considered that the various reports diagnosed her with bipolar disorder, and generally observed the adverse symptoms were controllable with medication. A.R. at 82.

The ALJ considered the testimony of an Easter Seals social worker, Joanne Foster. Noting that social workers are not medical sources, but are still acceptable "other sources," the ALJ noted Foster observed that Daniel was generally cooperative, benign, and stable despite moderate impairment, and that her mood remained stable despite being fired recently from work. A.R. at 83. The ALJ also considered the testimony of a New Passages Services social worker, Diane Shoda. Shoda's observations generally revealed problems coping, including anger, depression, and disinterest in treatment and a refusal to cooperate. A.R. at 84.

The ALJ considered the medical opinion of Dr. Ashok Shah, who was Daniel's treating physician during her treatment at New Passages. Dr. Shah's March 2009 evaluation noted bipolar disorder as well as generally fair and stable conditions. A.R. at 84. His November 2009 evaluation, in contrast, stated Daniel was "markedly limited" in multiple areas of functioning. A.R. at 84. Due to the inconsistency with the earlier report, as well as the other evidence in the record, including the concurrent observations of the New Passages social worker, the ALJ chose not to assign Dr. Shah's November 2009 assessment controlling weight. A.R. at 84.

The ALJ considered Daniel's testimony. Daniel stated the severity and intensity of her symptoms made it impossible to work. A.R. at 85. The ALJ, however, noted that her own testimony and previous records indicated she could go about daily routines with only mild impairment. The ALJ also noted her two previous employment terminations were not due

to the symptoms of her impairment, but for unrelated reasons. A.R. at 85. Thus, the ALJ chose to find her only partly credible in this respect, finding she did exhibit symptoms with a basis in an underlying medical impairment, but that she was generally capable of performing work and daily life activities with some limitations. A.R. at 85.

Based on all this foregoing evidence, the ALJ overall determined Daniel's residual functional capacity was "medium work," restricted to (1) simple, unskilled work only; and (2) no work requiring public contact or more than superficial contact with supervisors and co-workers. Because Daniel had no past relevant work, the ALJ moved to step five. A.R. at 86.

Fifth, the ALJ must determine, based on the residual function capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). Here, the ALJ considered that Daniel had no past relevant work, was 16 years old on the date of the disability onset, had a high school education and could communicate in English, and had no job skills to transfer because of the lack of relevant work. A.R. at 86. The ALJ asked a vocational expert for her testimony about the number of jobs in the national economy Daniel could perform, given her residual functional capacity. The vocational expert stated jobs meeting Daniel's criteria included packer (12,000 jobs), punch press operator (16,000 jobs), or cleaner (4,100 jobs). A.R. at 87. Based on these findings, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Daniel could perform. Thus, the ALJ concluded Daniel was "not disabled" under the above guidelines. A.R. at 87.

The Magistrate Judge's Report recommended granting summary judgment to the Commissioner, finding that the ALJ's decision was supported by substantial evidence.

Report, at 23. Daniel's objection to the Report focuses on the ALJ's denial of controlling weight to Dr. Ashok Shah's opinion; the weight of Daniel's testimony regarding the side effects of her medication; the finding of the severity of her impairments under the Social Security listing; and the accuracy of the hypothetical scenario presented to the vocational expert.

## DISCUSSION

I.   Consideration of Dr. Ashok Shah's Opinion as a Treating Source

Daniel's first objection to the Magistrate Judge's Report is that the ALJ improperly failed to give controlling weight to Dr. Ashok Shah's November 2009 medical opinion as an opinion by a treating source. Objection, at 6.

20 C.F.R. § 404.1527 specifies how an ALJ must evaluate medical opinion evidence. The ALJ must adhere to these standards as a matter of due process. *Wilson,* 378 F.3d at 544. An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson,* 378 F.3d at 544.

Dr. Ashok Shah was a treating source who evaluated Daniel twice, in March 2009, and November 2009. A.R. at 84. Dr. Shah's November 2009 medical source statement ("November statement") listed Daniel as "markedly limited" for twenty different activities on

11

the evaluation form. A.R. at 398. But the ALJ chose not to give controlling weight to the November statement, finding Dr. Shah's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with other substantial evidence in the case record, including his own March 2009 evaluation." A.R. at 84. The ALJ stated the length, nature, and specialization of Dr. Shah favored giving the November statement substantial weight, but the ALJ also found the November statement had no additional support and was inconsistent with the weight of the overall evidence. The ALJ thus chose to find the November statement not credible where inconsistent with the overall residual function capacity. A.R. at 85.

In support of his determination, the ALJ first noted that Dr. Shah's November statement contained a list of twenty activities, and the only assessment Dr. Shah provided was to check a box indicating "markedly limited" status for each activity. A.R. at 84. Dr. Shah's opinion was not backed up by a report or examination, and thus lacked additional support for its conclusions. Likewise, the November statement, although based on the New Passages treating record, was issued several months after Dr. Shah's previous March examination. A.R. at 84.

The ALJ stated the November statement was inconsistent with the March 2009 examination by Dr. Shah. The March examination of Daniel contradicted the November statement by stating that Daniel's attention and concentration were "fine." A.R. at 367. Internal inconsistency is a reason to find a treating physician's testimony not credible and assign it less than controlling weight. *Coldiron v. Comm'r of Soc. Secy.,* 391 F.App'x 435, 440 (6th Cir. 2010); *Ledford v. Astrue*, 311 F.App'x 746, 754 (6th Cir. 2008).

The ALJ also stated the November statement was not supported by the other medically acceptable opinions and techniques and substantial evidence in the record.

12

Notably, the November statement is inconsistent with the treating records from New Passages social worker Shoda, whose records stretch from December 2008 to early 2010, and include the time period of Dr. Shah's November statement. Shoda's observations tended to demonstrate that Daniel, although angry, depressed, and uninterested in treatment, was not so limited that she was unable to participate in her own therapy. The record generally reflects mood swings, but not ones that were so severe as to render her unable to function socially. A.R. at 339-366.

The Court finds substantial evidence exists to support the ALJ's finding that Dr. Shah's November statement did not merit controlling weight, and therefore will not overturn the findings.

II.  Weight of Daniel's Testimony Regarding Medication Side Effects

Next, Daniel argues the ALJ did not give the proper weight to Daniel's own testimony regarding the adverse side effects of her medication. Objection, at 7.

20 C.F.R. § 404.1529 specifies how an ALJ will evaluate the severity and persistence of symptoms of this type and section (c)(3) specifies the procedure for considering "other information," including the testimony of the claimant. This section generally requires consideration of the type, dosage, effectiveness, and side effects of medication, but also necessarily involves a determination of the credibility of the claimant's testimony as to her symptoms. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003) ("An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability"). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers,* 486 F.3d at 247. The ALJ's assessment of a claimant's credibility "are to be given great weight. *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th Cir.

2007). Like other conclusions, the ALJ's assessment of credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

During the hearing, Daniel testified that her symptoms rendered her unable to work. A.R. at 34. The ALJ did agree that the symptoms she testified to, including "depression, anxiety, mood swings, anger and irritability, irrational thinking, crying spells, and feelings of hopelessness and helplessness" were present and that the "medically determinable impairments could reasonably be expected to cause the alleged symptoms." A.R. at 81. The ALJ also found that her assertions "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." A.R. at 81.

The ALJ considered the record and Daniel's testimony regarding her personal life and general daily routines. Factors such as daily activities are valid considerations when assessing credibility. 20 C.F.R. 404.1529(c)(3)(i). Drawing on her testimony and on the function report filed when she applied for benefits, A.R. at 169, the ALJ noted that Daniel had "relatively unrestricted activities" of daily living, and generally was able to take personal care of herself, feed herself, drive, shop, spend entertainment time with friends, and manage money to a degree. A.R. at 85. The ALJ pointed out she tended to sleep very late in the day and stay awake late into the night. A.R. at 85. The ALJ also noted that the previous two employment terminations were not due to the symptoms of her impairment, but unrelated reasons, which he noted "strongly suggests" she would be able to continue working within the limits of her residual functional capacity. A.R. at 85. Combined with his assessment of her generally stable demeanor and history of successful treatment of the symptoms in the medical record, he concluded that her claim of debilitating side effects was not wholly credible. A.R. at 85.

14

The Court finds substantial evidence exists to support the ALJ's finding that Daniel was not wholly credible regarding the severity of her symptoms, and therefore will not overturn the findings.

III.     Classification of the Severity of Daniel's Impairment

Daniel next argues that the ALJ incorrectly classified the severity impairment under § 12.04 or § 12.08 by finding she did not have "marked" restrictions or difficulty. Objection, at 7.

As discussed above, if the ALJ determines that a claimant meets or equals a listing in Appendix 1, the claimant is disabled. The ALJ found that Daniel did not meet the criteria of paragraph B for listing § 12.04. Specifically, the ALJ found that she only experienced (1) mild restriction of activities of daily living, (2) moderate difficulty maintaining social functioning, and (3) moderate difficulty maintaining concentration, persistence, or pace, and (4) had no episodes of decompense of extended duration. A.R. at 79.

Daniel disputes the ALJ's finding of mild or moderate restrictions, arguing that no substantial evidence existed to support this finding. She simultaneously argues that instead, substantial evidence exists to support a finding of marked restriction for these categories. Objection, at 8.

With respect to activities of daily living, the ALJ noted, as discussed above, that Daniel had "relatively unrestricted activities" of daily living, and generally was able to take personal care of herself. A.R. at 85.

With respect to maintenance of social functioning, the ALJ noted that Daniel stated she gets along with her family and has at least one close social friend. A.R. at 79 He also indicated she experienced symptoms of "social withdrawal" and at times displays "aggressive, combatative behavior." A.R. at 79. The ALJ also noted the medical record

15

indicated her symptoms were well-controlled with medication. A.R. at 79.

With respect to maintenance of concentration, persistence, or pace, the ALJ noted the weight of the evidence indicated she had moderate, but not severe, problems in concentration. The ALJ noted many of the medical reports relied on in his report, such as the records from New Passages, demonstrated she had moderate situational impairment, but also that her attention and concentration were generally intact and functional despite her impairment. A.R. at 79.

With respect to episodes of decompensation, the ALJ found that since the alleged onset date of August 2003, Daniel had no episodes of decompensation of extended duration, based on the medical records. A.R. at 79.

In her objection, Daniel points out several other sources of evidence that might show she had marked, rather than moderate, impairment under the listing. But, "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006), *quoting Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted).

The Court finds substantial evidence exists to support the ALJ's finding that Daniel did not meet or equal the criteria of the Social Security listing, and therefore will not overturn the findings.

IV.     Accuracy of Hypothetical Scenario to the Vocational Expert's Testimony

Daniel argues that during the hearing, the ALJ used an inaccurate hypothetical scenario when questioning the vocational expert. The ALJ framed the hypothetical as a person "limited to medium exertional duties . . . limited to simple, unskilled SVP [specific vocational preparation rating] one or two jobs, no public contact work and no more than superficial contact with supervisors, co-employees, and the general public." A.R. at 54. Daniel argues the ALJ failed to include a limitation of "under supervision" found in Dr. Sheth's evaluation, on which the ALJ previously relied. A.R. at 337. She likewise argues, again, that a finding of "marked limitations" was correct, and should have been included in the hypothetical. Objection, at 11.

A hypothetical question and answer is substantive evidence if it is an accurate assessment of the individual's physical and mental impairments. *Mitchell v. Astrue*, 256 F.App'x 770, 772 (6th Cir. 2007). The question is not whether the ALJ presented the entire medical record to the vocational expert, but whether the ALJ presented an accurate description of the claimant's functional capacity and limitations to do work. The ALJ is not required to present the vocational expert with medical records or testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004).

As a threshold matter, Daniel asserts that the substantial evidence supported a finding of "marked limitations," not moderate or mild, that should have been included in the hypothetical. Here, Daniel is simply restating the previous argument that the ALJ erred in his assessment of her residual functional capacity. As discussed above, the ALJ had substantial evidence to justify his findings of moderate or mild limitations only.

With respect to the omission of the "under supervision" limitation found in Dr. Sheth's evaluation, Daniel effectively argues the ALJ should have adopted Dr. Sheth's evaluation

17

in whole, and had no basis to find the "under supervision" limitation not credible and not include it in the hypothetical. The ALJ did conclude Dr. Sheth's evaluation deserved substantial weight and its findings were consistent with the overall evidence. A.R. at 82. The ALJ, however, did not adopt Dr. Sheth's evaluation as the complete conclusion. The ALJ only found that Dr. Sheth's evaluation was "consistent" with Daniel's actual functional level and in turn "incorporat[ed]" the findings into his residual functional capacity assessment. A.R. at 82.

First, the ALJ did not accord Dr. Sheth's evaluation controlling weight, nor was he required to accept the evaluation in whole. It is well understood that "the ALJ — not a physician — ultimately determines the claimant's [residual functional capacity]." *Coldiron*, 391 F.App'x at 439. When formulating a hypothetical, "the ALJ is required to incorporate only those limitations that he accepts as credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). An ALJ is also permitted to make credibility determinations with respect to specific issues within a single report. *See Warner v. Comm. of Soc. Sec.*, 375 F.3d 387, 390-391 (6th Cir. 2004) (concluding it was proper for an ALJ to disregard two conclusions out of several more by a treating physician and not accept the opinion in whole). The ALJ did not commit an error merely by accepting only part of Dr. Sheth's evaluation.

The ALJ did not specifically find Dr. Sheth's "under supervision" limitation to be not credible. But an ALJ, as discussed above, "can consider all the evidence without directly addressing . . . every piece of evidence . . . Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky*, 167 F.App'x at 508. Here, as well as not including the "under supervision" limitation, the ALJ also added limitations Dr.

Sheth did not list. Dr. Sheth stated Daniel retained the capacity to do "simple unskilled work on sustained basis under supervision." A.R. at 333. The ALJ's hypothetical included limitations of "SVP [specific vocational preparation rating] one or two jobs, no public contact work and no more than superficial contact with supervisors, co-employees, and the general public." A.R. at 54. In other words, the "no more than superficial contact" limitation runs contrary to the "under supervision" limitation.

For the ALJ to have implicitly resolved this conflict, he need only have substantial evidence to support the "no more than superficial contact" limitation. As discussed above, the ALJ already found Daniel suffered from "moderate limitations in maintaining social functioning." A.R. at 79. The ALJ there considered evidence including her symptoms of "social withdrawal" and occasional displays of "aggressive, combatative behavior" based on her testimony and several medical records. A.R. at 79. The Court has already concluded the ALJ had substantial evidence to justify that finding of "moderate limitations." The Court concludes this also constitutes substantial evidence to support the ALJ's conclusion Daniel should only have limited contact with supervisors, co-workers, and customers. "The fact that other substantial evidence in the record . . . could have supported use of a modified hypothetical question is insufficient to warrant disturbing the Commissioner's ultimate decision." *Mitchell*, 256 F.App'x at 773. Therefore, the ALJ "implicitly resolved" Dr. Sheth's "under supervision" limitation in favor of the "no more than superficial contact" limitation.

The Court finds substantial evidence existed to support the ALJ's hypothetical and his decision not to include a limitation of "under supervision" in the hypothetical. Therefore, the Court finds the hypothetical presented an accurate description of Daniel's residual functional capacity, and therefore will not overturn the findings.

## CONCLUSION

The Court finds that as to each objection, the ALJ had substantial evidence to support his findings, and the ALJ's decision was within the "zone of choice" accorded to an ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Therefore, under the standard of review set out in 42 U.S.C. 405(g), the Court will decline to overturn the ALJ's decision.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the magistrate judge's report (docket no. 19) is **ADOPTED** over Daniel's objections (docket no. 21).

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (docket no. 13) is **GRANTED**, and Daniel's motion for summary judgment (docket no. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 30, 2012

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2012, by electronic and/or ordinary mail.

Carol Cohron
Case Manager